UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEANA S.,

                  Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                  Defendant.

CASE NO. C18-5521-MAT

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL

      Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

      Plaintiff was born on XXXX, 1967.[1] She has an 11th grade education and a GED, and previously worked as a dealer and supervisor at a casino. (AR 47-50.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

Plaintiff protectively applied for DIB in July 2014. (AR 81, 172-73.) That application was denied and Plaintiff timely requested a hearing. (AR 110-16, 118-26.)

On July 29, 2016, ALJ Kelly Wilson held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 42-80.) On May 2, 2017, the ALJ issued a decision finding Plaintiff not disabled. (AR 16-30.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on April 23, 2018 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since November 15, 2012, the alleged onset date. (AR 18.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe Plaintiff's degenerative disc disease of the thoracic spine and degenerative disc disease of the lumbar spine. (AR 18-20.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 20.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with additional limitations: she can sit four hours in an eight-hour workday,

in one-hour intervals. She can stand for four hours in an eight-hour workday, in two-hour intervals. She can walk four hours in an eight-hour workday in two-hour intervals. She can frequently operate foot controls with the bilateral lower extremities. She can frequently balance, kneel, crouch, and crawl. She can occasionally climb and stoop. She can occasionally work at unprotected heights. (AR 20-21.) With that assessment, the ALJ found Plaintiff unable to perform past relevant work. (AR 28.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found Plaintiff capable of transitioning to other representative jobs, such as cleaner polisher, security guard, and office helper. (AR 29-30.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) discounting her subjective symptom testimony, and (2) assessing certain medical evidence and opinions. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

/ / /

## Subjective symptom testimony

The ALJ discounted Plaintiff's subjective allegations, citing (1) objective medical evidence inconsistent with disabling limitations, (2) evidence of improvement with conservative treatment, (3) lack of recent treatment, (4) daily activities inconsistent with disabling limitations, (5) evidence that she stopped working for reasons other than her impairments, and (6) her receipt of unemployment benefits during the time that she claimed to be disabled. (AR 21-26.) Plaintiff argues that these reasons are not clear and convincing, as required in the Ninth Circuit. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

Two of the ALJ's reasons are not convincing. The ALJ found that Plaintiff's lack of recent treatment suggests that her symptoms improved with treatment in the past. (AR 25.) At the administrative hearing, however, Plaintiff explained that she lost her insurance and had been unable to afford treatment or medication regularly. (AR 52-58.) The ALJ questioned Plaintiff at length about those circumstances, but did not mention this in the decision or explain why she (presumably) found the explanation to be insufficient. This approach is inconsistent with Social Security Ruling 16-3p, which provides that an ALJ should "consider and address reasons for not pursuing treatment that are pertinent to an individual's case." 2017 WL 5180304, at *10 (Oct. 25, 2017). The ALJ's failure to address Plaintiff's explanation for her lack of treatment is error.[2] The ALJ also erred in finding that Plaintiff's activities undermined her allegations, as the Commissioner concedes. Dkt. 11 at 2 n.2.

These errors are harmless, however, in light of the ALJ's other valid reasons. *See*

---

[2] The ALJ also cited Plaintiff's lack of treatment since 2015 as a reason to discount medical opinions (AR 27), and this reason is also harmless in that context because the ALJ provided other valid reasons to discount those opinions.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 4

*Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Specifically, the ALJ reasonably found that the circumstances related to Plaintiff's most recent employment undermine her allegations. Plaintiff testified that she lost her most recent job due to a mistake she made, although she suspected that she was terminated because her employer was unhappy with the amount of time off she requested due to her impairments. (AR 49-50.) Plaintiff alleges that her disability began as soon as she lost her job, but the ALJ highlighted parts of the record that indicate she did not take excessive sick leave while employed, and that she received only minimal treatment while she was working. (AR 25-26 (referencing AR 315).) Plaintiff does not explain why the ALJ's reasoning is erroneous in this regard. Dkt. 10 at 17. Although her termination predated her alleged onset of disability by a few days, it is close enough in time to be relevant, and Plaintiff does not address the evidence cited by the ALJ that is inconsistent with Plaintiff's testimony about why she was terminated. This reasoning is a legally sufficient basis to discount Plaintiff's testimony. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (affirming an ALJ's discounting of a claimant's testimony because, *inter alia*, he stopped working because he was laid off, rather than because of his impairments).

Plaintiff also received unemployment benefits during every quarter of 2013, although she alleged she became disabled in November 2012. The ALJ found that Plaintiff's receipt of those benefits was inconsistent with her allegation of disability during that time, because there was no evidence that Plaintiff had requested an exemption from the requirement that she certify she was available to work full-time in order to receive the benefits. (AR 26 (citing WASH. ADMIN. CODE § 195-170-050).) Plaintiff argues that because the ALJ did not ask her specifically whether she held herself out as available for full-time work, the ALJ erred in presuming that she had. Dkt. 12 at 8. But Plaintiff was asked about her benefits at the hearing and did not state that she had certified

she was available for part-time work, which supports the ALJ's finding that the record did not suggest that Plaintiff had sought an exemption from Washington state's full-time work requirement. *See John M. v. Comm'r of Social Sec.*, 2019 WL 112778, at *6 (Jan. 4, 2019) (addressing Washington state's unemployment benefits requirements). This reasoning supports the ALJ's assessment of Plaintiff's testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working.").

The ALJ also properly looked to the objective medical evidence and Plaintiff's response to treatment to determine whether her allegations were consistent with that record. The ALJ summarized the entire record and concluded that the objective findings were not so severe as to support disabling limitations, and also pointed to evidence that physical therapy and medication helped her symptoms. (AR 21-25.) These are clear and convincing reasons to discount Plaintiff's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain."). Plaintiff's briefs do not mount a specific challenge to this line of the ALJ's reasoning. Dkt. 10 at 15-17, Dkt. 12 at 8.

Because the ALJ provided multiple legally sufficient reasons to discount Plaintiff's

testimony, the ALJ's assessment is affirmed.

## Medical evidence

The ALJ discounted opinions provided by treating providers Robyn Davies, M.D.; Andrew Manista, M.D.; and Samantha Maki, PT, DPT. (AR 26-27.) The ALJ discounted these opinions for similar reasons: she found that each of the opinions was inconsistent with the medical record, which did not reveal "the type of significant clinical abnormalities to substantiate the opinion." (*Id.*) The ALJ also discounted the opinions because Plaintiff had a minimal treating relationship with each provider before the opinions were written, and they were written at a time when Plaintiff was experiencing a symptom flare. (*Id.*) The ALJ further cited the contrary opinion of consultative examiner Derek Leinenbach, M.D., who had the opportunity to review most of Plaintiff's recent treatment notes, and examined her during a time when her symptoms were not exacerbated. (AR 26-28.) Plaintiff contends that these reasons are not legally sufficient, and the Court will address each reason in turn.

## Legal standards

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

An ALJ may also consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Lack of support in the objective medical record

The ALJ found that the 2014 form opinions of Drs. Davies and Manista (AR 293-94, 319-20) and Ms. Maki (AR 451-53) were not supported by the objective evidence. (AR 26-27.) Specifically, the ALJ noted that Dr. Davies indicated that Plaintiff had no tenderness of the spine or paraspinal musculature, and had normal reflexes, intact strain, and normal gait. (AR 26 (citing AR 288-89).) Dr. Manista found Plaintiff had mild tenderness of the thoracic and lumbar paraspinal muscles, good posture, full to near-full strength in the legs, intact sensation in the legs, and normal reciprocal gait. (AR 27 (citing AR 368-69).) The ALJ cited those findings as reasons to discount the opinions of Drs. Davies and Manista, and Ms. Maki, who all opined that Plaintiff was not physically capable of working full-time due to her impairments. (AR 26-27.) The ALJ also indicated that there was no evidence to support the opinions of Dr. Davies and Ms. Maki

regarding manipulative limitations.³ (*Id.*)

Plaintiff argues that the ALJ erred in characterizing the objective medical evidence as failing to corroborate the opinions of Drs. Davies and Manista, and Ms. Maki. She posits an alternate interpretation of the evidence, but fails to show that the ALJ erred in finding, as did the State agency review Norman Staley, M.D., that the record was inconsistent with the conclusions of those providers. (*See* AR 94-103.) Because Plaintiff has failed to show that the ALJ's interpretation of the medical record is not reasonable, the ALJ's interpretation shall not be disturbed.

Length of treating relationship

The ALJ noted that Plaintiff had not had many visits with these treatment providers before they wrote their opinions, which was particularly meaningful because they were treating her in the context of a fall accident that exacerbated her symptoms. (AR 26-27 (citing AR 285).) Plaintiff notes that none of these treating providers mentions her fall as a basis for their opinion. Dkt. 12 at 1-2. That may be true, but because the record documents that Plaintiff's fall exacerbated her symptoms in the weeks preceding these opinions, it is reasonable to find that the opinions were influenced by the symptoms Plaintiff experienced at that time, particularly in light of the short and/or infrequent treating relationships with those providers. (AR 283-85, 368, 400.) This is a specific, legitimate reason to discount the opinions of Drs. Davies and Manista, and Ms. Maki. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's

---

³ Ms. Maki actually opined that Plaintiff did not have any manipulative limitations. (AR 452.) The ALJ's reference to such limitations is erroneous, but this error is harmless because the ALJ provided other valid reasons to discount Ms. Maki's opinion.

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 9

medical opinion.").

Dr. Leinenbach's contrary opinion

Dr. Leinenbach examined Plaintiff in July 2016, approximately two years after the treating providers wrote their opinions, and reviewed records from Dr. Manista's office. (AR 458-68.) The ALJ gave great weight to Dr. Leinenbach's opinion, but found Plaintiff to be more limited in standing and walking than Dr. Leinenbach indicated. (AR 28.) Plaintiff argues that the ALJ should not have discounted the treating providers on account of their short treating relationships, but then also give significant weight to a one-time examiner's opinion. Dkt. 10 at 8. This argument is not persuasive under the circumstances of this case, because the treating providers had a limited relationship with Plaintiff at a time of a symptom flare, and it is reasonable to find that an opinion written under those circumstances is less reliable than an opinion written at another time. Plaintiff has not identified an error in the ALJ's assessment of Dr. Leinenbach's opinion vis-à-vis the treating providers' opinions.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 9th day of April, 2019.

Mary Alice Theiler
United States Magistrate Judge